[Cite as *State v. Good*, 2021-Ohio-4560.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                  CASE NO.  2-21-02

      v.

BRETT S. GOOD,                          **O P I N I O N**

      DEFENDANT-APPELLANT.

---

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2017 CR 0001

Judgment Affirmed

Date of Decision:  December 27, 2021

---

APPEARANCES:

    *Rob C. Wiesenmayer, II*  for Appellant

    *Edwin A. Pierce* & *Reed D. Searcy*  for Appellee

**MILLER, J.**

{¶1} Defendant-appellant, Brett S. Good, appeals the February 19, 2021 judgment of the Auglaize County Court of Common Pleas vacating his re-sentencing hearing. For the reasons that follow, we affirm.

*Background*

{¶2} This case arises from a December 31, 2016 incident in which members of the Wapakoneta Police Department responded to a report of a female who was afraid to leave her residence for fear her husband, Good, would harm himself. At the scene, Good immediately entered a patrol vehicle and, despite not being placed under arrest, requested to be taken to the police department to be interviewed. During his interview with law enforcement, Good admitted to a number of sexually-motivated crimes involving two minor children living in his household, which occurred over the course of more than one year. The victims were interviewed and corroborated Good's admission. Following the interviews with the victims, Good was arrested.

{¶3} On January 5, 2017, the Auglaize County Grand Jury indicted Good on 41 counts: Counts One to Ten of rape in violation of R.C. 2907.02(A)(1)(b) with an allegation that the victim was less than ten years of age at the time of the offense, first-degree felonies; Counts Eleven to Sixteen of rape in violation of R.C. 2907.02(A)(1)(b) with the allegation that the victim was less than 13 years of age at

the time of the offense, first-degree felonies; and Counts Seventeen to Forty One of rape with the allegation that the victim was compelled to submit by force or threat of force in violation of R.C. 2907.02(A)(2); first-degree felonies. (Doc. No. 1). On January 6, 2017, Good appeared for arraignment and pleaded not guilty to the counts of the indictment.

{¶4} On July 5, 2017, Good appeared for a change-of-plea hearing. Under a negotiated plea agreement, Good withdrew his pleas of not guilty and entered guilty pleas to Counts One, Eleven, and Seventeen. In exchange, the State asked for leave to nolle prosequi the remaining counts of the indictment. The trial court accepted Good's guilty pleas, found him guilty of the offenses and granted the State's motion to dismiss the remaining counts of the indictment.

{¶5} The trial court proceeded immediately to sentencing where it imposed a jointly-recommended sentence. With respect to Count One, the trial court sentenced Good to a term of 25 years to life in prison. With respect to Count Eleven, the trial court sentenced Good to 25 years to life in prison. With respect to Count Seventeen, the trial court sentenced Good to a term of 11 years in prison. Pursuant to the parties' recommendation, the trial court ordered the sentences to run concurrently for an aggregate sentence of 25 years to life in prison. On July 6, 2017, the trial court filed its judgment entry of conviction and sentence.

{¶6} On March 19, 2020, Good filed a motion to withdraw his guilty pleas after sentencing pursuant to Crim.R. 32.1. Good alleged that his guilty pleas were invalid because they were not made knowingly, voluntarily, and intelligently. Specifically, Good argued the 25 years to life in prison imposed for Counts One and Eleven were not authorized by law. On May 26, 2020, the State responded to Good's motion to withdraw his guilty pleas after sentencing. On May 28, 2020, the trial court filed a judgment entry denying Good's motion to withdraw his guilty pleas. However, the trial court set the matter for a resentencing hearing.

{¶7} On June 16, 2020, Good filed a notice of appeal. On June 25, 2020, the trial court vacated Good's resentencing hearing while his appeal was pending. On January 25, 2021, this Court dismissed Good's appeal on the grounds that it lacked jurisdiction to consider the appeal because the trial court's order denying his post-sentence motion to withdraw his guilty pleas was not a final, appealable order. On February 19, 2021, the trial court issued a judgment entry vacating Good's resentencing hearing and finding that a resentencing hearing was barred by *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784.

{¶8} On March 19, 2021, Good filed a notice of appeal. He raises four assignments of error for our consideration.

**Assignment of Error No. I**

**The trial court's actions of failing to comply with Criminal Rule 11(C)(2)(a) requiring the defendant-appellant to understand the**

**correct statutory maximum penalties in order for his pleas to be knowing, intelligent and voluntary, and thereafter in sentencing the defendant-appellant to statutorily excessive penalties which are void ab initio and resulted in manifest injustice to the defendant-appellant entitle him to withdraw his guilty pleas pursuant to Criminal Rule 32.1.**

### Assignment of Error No. II

**The failure of defense counsel to adequately advise the defendant-appellant about the correct maximum penalties as to Counts One (1) and Eleven (11) constituted denial of effective assistance of counsel rendering his pleas of guilty involuntary, and impaired the knowing and voluntary nature of his pleas, requiring that the defendant-appellant be permitted to withdraw his guilty plea.**

### Assignment of Error No. III

**The trial court [erred] in sentencing the defendant-appellant to concurrent sentences of twenty-five (25) years to possible life imprisonment as to amended Counts One (1) and Eleven (11) acted contrary to law and exceeded the statutory requirements pursuant to Ohio Revised Code § 2971.03(B)(1)(b) resulting in a sentence contrary to law.**

### Assignment of Error No. IV

**The timeliness of defendant-appellant filing his motion to withdraw his guilty plea pursuant to Criminal Rule 32.1 should not bar him from relief due to the trial court advising him that in following the joint sentencing recommendation that the defendant-appellant would waive all rights to appeal. Said waiver was not voluntary as it was based on errors by the trial court.**

### *Discussion*

{¶9} Appellate review of the trial court's denial of a motion to withdraw a guilty plea is limited to whether the trial court abused its discretion. *State v.*

*Cartlidge*, 3d Dist. Seneca No. 13-21-06, 2021-Ohio-3787, ¶ 8. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶10} A motion to withdraw a guilty plea is governed by Crim.R. 32.1, which provides:

> A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

A defendant seeking to withdraw a guilty or no-contest plea after sentencing bears the burden of demonstrating a "manifest injustice." *State v. James*, 3d Dist. Hancock No. 5-19-30, 2020-Ohio-720, ¶ 11, citing *State v. Smith*, 49 Ohio St.3d 261 (1977), paragraph one of the syllabus. "[A] postsentence withdrawal motion is allowable only in extraordinary cases." *Smith* at 264. The Supreme Court of Ohio has defined the manifest injustice standard as a "clear or openly unjust act." *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208 (1998). "'A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.'" *State v. Kimpel*, 3d Dist. Shelby No. 17-17-12, 2018-Ohio-2246, ¶ 16, quoting *Brady v. United States*, 397 U.S. 742, 757, 90 S.Ct. 1463, 1463 (1970). "'A "manifest injustice" comprehends a fundamental flaw in the path of justice so extraordinary that the defendant could

not have sought redress from the resulting prejudice through another form of application reasonably available to him or her.'" *State v. Brooks*, 2d Dist. Montgomery No. 23385, 2010-Ohio-1682, ¶ 8, quoting *State v. Hartzell*, 2d Dist. Montgomery No. 17499, *2 (Aug. 20, 1999).

**{¶11}** Good raises three principal arguments in support of his position that he suffered a manifest injustice and, therefore, the trial court erred by denying his motion to withdraw his guilty plea after the imposition of sentence. First, Good claims that he suffered a manifest injustice because the trial court failed to properly advise him of the correct maximum penalties prior to his change of plea. Second, Good argues that he suffered a manifest injustice because the trial court imposed a sentence that is contrary to law. Finally, Good contends that he suffered a manifest injustice because he received ineffective assistance of trial counsel. We address each of Good's contentions in turn.

**{¶12}** First, we consider Good's argument regarding the trial court's failure to correctly explain the maximum statutory penalties with respect to Counts One and Eleven. Good argues that the trial court abused its discretion by denying his postsentence motion to withdraw his guilty pleas, in part, because the trial court conducted an inadequate plea colloquy. Specifically, Good contends the trial court violated Crim.R. 11(C)(2)(a) because he was incorrectly notified of the maximum

penalties he faced with respect to Counts One and Eleven, a defect which Good argues renders the enforcement of his plea unconstitutional.

{¶13} Crim.R. 11, which outlines the procedures that trial courts must follow when accepting pleas, "'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975). "If the plea was not made knowingly, intelligently, and voluntarily, enforcement of that plea is unconstitutional." *Id.* at ¶ 10. Crim.R. 11(C)(2), which applies specifically to a trial court's acceptance of pleas in felony cases, provides as follows:

> (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally * * * and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury

-8-

trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Crim.R. 11 "'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *Dangler* at ¶ 11, quoting *State v. Stone* at 168. The Supreme Court of Ohio has recently reaffirmed that "our focus in reviewing pleas has not been on whether the trial judge has '[incanted] the precise verbiage' of the rule, *State v. Stewart*, 51 Ohio St.2d 86, 92, 364 N.E.2d 1163 (1977), but on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea[.]" *Dangler* at ¶ 12, citing *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 15-16.

{¶14} "When a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial-court proceedings and that he was prejudiced by that error." *Dangler* at ¶ 13, citing *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 14-15; Crim.R. 52. Generally, to demonstrate prejudice, a defendant would have to establish that "his plea would not have otherwise been made." *Dangler* at ¶ 24.

**{¶15}** There are limited exceptions to the prejudice requirement in the criminal-plea context. "When a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Id.* at ¶ 14, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 31 and *Veney* at syllabus. The "constitutional" rights are set forth in Crim.R. 11(C)(2)(c) above. *See Dangler* at ¶ 14. When a trial court fails to fully cover "nonconstitutional" rights in Crim.R. 11, "a defendant must affirmatively show prejudice to invalidate a plea." *Dangler* at ¶ 14, citing *Clark* at ¶ 17.

**{¶16}** The Supreme Court of Ohio recognized one other exception to the prejudice requirement: "a trial court's *complete* failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." (Emphasis sic.) *Dangler* at ¶ 15, citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, ¶ 22. However, "[a]side from these two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his plea vacated unless he demonstrates that he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). "The test for prejudice is 'whether the plea would have otherwise been made.'" *Id.* at ¶ 16, quoting *Nero* at 108.

{¶17} Good argues that the trial court's Crim.R. 11 colloquy was defective because the trial court failed to properly advise him of the maximum penalties with respect to Counts One and Eleven. Good's argument is without merit.

{¶18} With respect to Count One, rape of a victim less than 10 years old, the trial court had the option of sentencing Good to (1) a term of life imprisonment without parole pursuant to R.C. 2907.02(B) or (2) a minimum term of 15 years and a maximum term of life imprisonment with the possibility of parole pursuant to R.C. 2971.03(B)(1)(b). With respect to Count Eleven, rape of a victim less than 13 years old, the required sentence pursuant to R.C. 2971.03(B)(1)(a) was 10 years to life in prison with the possibility of parole.

{¶19} At the change-of-plea hearing, the trial court informed Good that, with respect to Count One, it had the option of imposing a prison term of 25 years to life or a prison term of life without parole. (July 5, 2017 Tr. at 9-10). With respect to Count Eleven, the trial court advised Good that the charge carried a sentence of 25 years to life with the possibility of parole. (*Id.* at 10). Thus, although the trial court incorrectly informed Good of the *minimum* sentences with respect to Counts One and Eleven, the trial court did correctly advise Good of the *maximum* penalties of life without parole and life with the possibility of parole, respectively. "Crim.R. 11(C)(2)(a) requires the trial court to determine whether a defendant is entering his plea with an understanding of the maximum penalty involved; by its terms, Crim.R.

11(C)(2)(a) does not require the trial court to determine whether the defendant is aware of every lesser penalty that could be imposed." *State v. Liles*, 3d Dist. Allen No. 1-18-69, 2019-Ohio-3029, ¶ 19. Under the relevant statutes, 15 years in prison and 10 years in prison was not the maximum penalty Good was facing. Moreover, the record indicates that the trial court did actually inform Good of the maximum penalties associated with Counts One and Eleven prior to accepting his guilty plea. (July 5, 2017 Tr. at 9-10). Further, at the change-of-plea hearing, Good acknowledged stated, "[I]t's either life or life, so I'm going to take the lesser of the two evils." (*Id.* at 16). Good's statement indicates that not only was he aware of the maximum sentences available to him, but that he accepted the plea agreement for the purpose of avoiding the maximum penalty associated with Count One, life in prison without the possibility of parole. Accordingly, the trial court's failure to correctly apprise Good of the minimum sentence does not affect the sufficiency of the Crim.R. 11 plea colloquy. *See Liles* at ¶ 19.

{¶20} Even so, Good fails to demonstrate that he was prejudiced from the trial court's error. Rather than being sentenced to life imprisonment without parole, for Count One, Good received a term of 25 years to life in prison, with the possibility of parole. Thus, as Good's sentence was less than the actual potential maximum and within the range stated by the trial court, Good did not suffer any prejudice. *Liles* at ¶ 21; *State v. Bailey*, 11th Dist. Geauga No. 2006-G-2734, 2007-Ohio-6160, ¶ 14-

15 (finding no prejudice where the trial court imposed a sentence that was "less than the actual maximum potential sentence and within the limit of the maximum sentence as stated by the trial judge"). Furthermore, Good fails to argue that but for the trial court's alleged error he would not have entered pleas of guilty. Indeed, if Good was willing to accept a plea with a 25-year-to-life sentence in 2017, it stands to reason that he would have accepted a 15-year-to-life or 10-year-to-life sentence if he had been correctly advised of the mandatory minimum sentences. Accordingly, we do not find that Good suffered a manifest injustice by the trial court's misstatement of the mandatory minimum sentence.

{¶21} Next, we consider Good's argument that the trial court erred in sentencing him with respect to Counts One and Eleven, and that the error resulted in Good suffering a manifest injustice.

{¶22} As an initial matter, we acknowledge that Good's sentence is contrary to law. As detailed above, with respect to Count One, the trial court had the option of sentencing Good to (1) a term of life imprisonment without parole pursuant to R.C. 2907.02(B) or (2) a minimum term of 15 years and a maximum term of life imprisonment pursuant to R.C. 2971.03(B)(1)(b). With respect to Count Eleven, the required sentence pursuant to R.C. 2971.03(B)(1)(a) was 10 years to life in prison. With respect to Count Seventeen, forcible rape, the statutory range was 3 to 11 years in prison pursuant to R.C. 2907.02(B) and R.C. 2929.14(A).

-13-

**{¶23}** However, acting pursuant to the joint-sentence recommendation proffered by Good and the State, the trial court sentenced Good to 25 years to life in prison with respect to Count One, 25 years to life in prison with respect to Count Eleven, and 11 years in prison with respect to Count Seventeen. The trial court ordered the sentences to be served concurrently for an aggregate sentence of 25 years to life in prison, with the possibility of parole. Accordingly, the trial court erred with respect to the sentences imposed as to Counts One and Eleven. However, we do not find that the sentence is void or that Good suffered a manifest injustice as a result of the error.

**{¶24}** Good argues that because the trial court's sentence with respect to Counts One and Eleven is contrary to law, his conviction and sentence are void. Good is incorrect. "A judgment or sentence is void only if it is rendered by a court that lacks subject-matter jurisdiction over the defendant." *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, ¶ 43. Even if a sentence imposed is not authorized by law, the sentence would only be voidable as long as the trial court possessed both subject-matter and personal jurisdiction. *Id.* Here, Good's argument is that his sentence is void because it was based on an error and is contrary to law. Accordingly, he does not allege, and we do not find, that the trial court lacked subject-matter jurisdiction over him. Rather, we find that the sentences were merely voidable. *See Henderson* at ¶ 1 ("sentences based on an error * * * are voidable if

the court imposing the sentence has jurisdiction over the case and the defendant"). "The failure to timely –at the earliest available opportunity—assert an error in a voidable judgment, even if that error is constitutional in nature, amounts to the forfeiture of any objection." *State v Robey*, 5th Dist. Fairfield No. 2021-CA-00010, 2021-Ohio-3884, ¶ 25, citing *Henderson*.  Accordingly, Good's postsentence motion to withdraw his guilty plea, filed several years after conviction and sentence, is not the proper vehicle for Good to attack his sentence which was imposed by a court with proper subject-matter and personal jurisdiction.  Thus, although Good implores this court to vacate his sentence or remand his case for resentencing because it is contrary to law, such actions are outside of the scope of our review of the trial court's denial of Good's postsentence motion to withdraw his guilty plea. Rather, our review of Good's assignments of error must focus on whether the sentencing error amounted to a manifest injustice such that the trial court erred by denying his postsentence motion to withdraw his guilty plea.  We hold that it does not.

{¶25} First, as previously stated, a manifest injustice comprehends a flaw in the path of justice "so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him." *Brooks*, 2010-Ohio-1682, ¶ 8.  Here, Good failed to file a direct appeal, and thus failed to seek the redress available to correct the sentencing error

he now raises. Further, we note that Good still has the option of filing a motion for leave to file a delayed direct appeal pursuant to App.R. 5(A).[1] Accordingly, because Good has other means by which to correct his sentence, he does not show a manifest injustice.

{¶26} Furthermore, our review of the record supports a finding that the sentencing error of which Good complains does not rise to the level of a manifest injustice. First, the trial court could have lawfully imposed a sentence of 25 years to life in prison by imposing the mandatory minimum sentences for Counts One and Eleven, 15 years to life and 10 years to life, respectively, and running those sentences consecutively to each other and concurrently to the sentence imposed for Count Seventeen. Accordingly, the trial court had the ability to sentence Good to 25 years to life in prison. Moreover, the record indicates that the State's willingness to run the sentences concurrently was based upon its understanding that Good would receive a sentence of 25 years in prison. Specifically, the State acknowledged that it recommended running Counts One and Eleven consecutively because it "believe[d] that twenty-five years to life is a justified sentence for [Good's] crimes." (July 5, 2017 Tr. at 29-30). Thus, Good bargained to receive a sentence of 25 years to life in prison, and he received the benefit of that bargain. Accordingly, we do not find that Good suffered a manifest injustice due to the trial court's sentencing error.

---

[1] Of course Good must still comply with the requirements of the Appellate Rules and must not delay filing such a motion.

**{¶27}** Finally, Good argues that he suffered a manifest injustice because he received the ineffective assistance of trial counsel. Specifically, Good alleges that his trial counsel was ineffective by misinforming him of the correct maximum penalties for Counts One and Eleven, rendering his guilty pleas involuntary. Good argues that due to this incorrect legal advice, he was denied vital information upon which to make a decision regarding whether to go to trial, negotiate different terms during plea negotiations, or enter guilty pleas. Accordingly, Good contends that the trial court erred by denying his postsentence petition to withdraw his guilty plea. We disagree.

**{¶28}** "In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions." *State v. Evick*, 12th Dist. Clinton No. CA2019-05-010, 2020-Ohio-3072, ¶ 45. "A claim of ineffective assistance of trial counsel may serve as a basis for seeking a post-sentence withdraw of a guilty or no-contest plea under Crim.R. 32.1." *State v. James*, 3d Dist. Hancock No. 5-19-30, 2020-Ohio-720, ¶ 14. "'"When an alleged error underlying a motion to withdraw a guilty plea is ineffective assistance of counsel, the defendant must show (1) that his counsels' performance was deficient and (2) that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty."'" *Id.*, quoting *State v. Taveras*, 12th Dist. Warren No. CA2016-06-054, 2017-Ohio-1496, ¶ 17, quoting, *State v. Tapia-Cortes*, 12th Dist.

Butler No. CA2016-02-031, 2016-Ohio-8101, ¶ 13.  The party raising a claim of ineffective assistance has the burden of establish both elements to warrant relief.  *Id.*

{¶29} Good claims that his trial counsel incorrectly informed him of the maximum penalties associated with Counts One and Eleven.  However, a review of the record indicates that Good's trial counsel incorrectly informed him of the mandatory *minimum* sentences associated with Counts One and Eleven, but correctly informed him of the *maximum* sentences associated therewith.  (July 5, 2017 Tr. at 5-7).

{¶30} Furthermore, given the totality of the circumstances, we do not find that the misinformation Good received from his trial counsel regarding the maximum penalties amounts to a manifest injustice.  Although Good's trial counsel was operating under the erroneous belief that the mandatory minimum sentences associated with Counts One and Eleven were 25 years to life in prison, the record indicates that the State and the trial court were also operating under the same mistaken understanding.  Also, Good agreed to a sentence of 25 years to life in prison.  It stands to reason that he would have pled guilty knowing the court would impose terms of 15 years to life and 10 years to life and could run those sentences consecutively for an aggregate total of 25 years to life imprisonment.

{¶31} Additionally, Good's trial counsel was successful in negotiating a plea that resulted in the trial court dismissing 38 of the 41 counts in the indictment.

Notably, all 38 dismissed charges were first-degree felonies, 9 of which carried potential penalties of life in prison without the possibility of parole. (Doc. No. 1). Furthermore, Good negotiated a plea that avoided the maximum sentence of life in prison without the possibility of parole. Therefore, the record supports the trial court's determination that Good did not carry his burden in establishing both that his trial counsel was defective and that but for counsel's errors, he would not have pled guilty. For these reasons, we conclude that the trial court did not abuse its discretion in finding that Good failed to establish a manifest injustice on the basis of ineffective assistance of his trial counsel sufficient to warrant a postsentence withdrawal of his guilty plea.

{¶32} Finally, in his fourth assignment of error, Good argues that his request to withdraw his guilty plea should not be required to comply with "any time constraints the law may require" because the trial court advised him at the change-of-plea hearing that he was waiving "all" his rights to appeal his sentence. We disagree. R.C. 2953.08(A) provides specific grounds for a defendant to appeal a sentence. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 10. Under R.C. 2953.08(D)(1), "[a] sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." "In discussing jointly recommended sentences, the Ohio

Supreme Court has recognized that '[t]he General Assembly intended a jointly agreed-upon sentence to be protected from review precisely because the parties agreed that the sentence is appropriate.'" *State v. Morris*, 3d Dist. Hardin No. 6-12-17, 2013-Ohio-1736, ¶ 11, quoting *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, ¶ 25. Here, although Good's sentence was recommended jointly by the defendant and prosecution and imposed by the trial court, for the reasons detailed above, Good's sentence is not authorized by law. However, the fact that Good's sentence, which is voidable and not void, is contrary to law does not entitle him to disregard the applicable time constraints and procedure. As we previously detailed, Good had the recourse of filing a direct appeal to challenge his sentence. Although Good failed to timely file a direct appeal, we once again note that he still has the option of filing a motion for leave to file a delayed direct appeal. *See* App.R. 5(A).

{¶33} Good's assignments of error are overruled.

*Conclusion*

{¶34} For the foregoing reasons, Good's assignments of error are overruled. Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Auglaize County Court of Common Pleas.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**